UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Damien Lashaun Nelson,         Civil No. 24-4307 (DWF/JFD)

      Plaintiff,

v.

Center for Reproductive Medicine &        **MEMORANDUM**
Advanced Reproductive Technologies;        **OPINION AND ORDER**
Joshua Kapfhamer, *M.D., M.A. (Both Capacities)*; and Attorney Advisors;

      Defendants.

## INTRODUCTION

This matter is before the Court on Defendants Center for Reproductive Medicine & Advanced Reproductive Technologies,[1] Joshua Kapfhamer, and Attorney Advisors' motion to dismiss Plaintiff Damien Lashaun Nelson's second amended complaint.[2] (Doc.

---

[1] Center for Reproductive Medicine, P.A., and Advanced Reproductive Technologies, P.A., are separate entities. (*See* Doc. No. 41 at 5 n.1.) The Court refers to them collectively as "CRM."

[2] Nelson filed his original complaint in state court on September 6, 2024. (*See* Doc. No. 1 at 2.) He then filed a first amended complaint on November 26, 2024, also in state court. (*Id.*) Following Defendants' removal of this action to federal court, Nelson filed his second amended complaint. (Doc. No. 8 ("SAC").)

Nelson did not obtain leave of court to file the second amended complaint, nor did Defendants consent to the filing. The Court nonetheless views the second amended complaint as the operative complaint because Defendants consent to this course of action. (*See* Doc. No. 12 at 3.)

No. 10.) Nelson opposes the motion. (Doc. Nos. 26, 37, 38.)[3] For the reasons set forth below, the Court grants the motion.

## BACKGROUND

In 2017 and 2018, Nelson successfully used CRM's in-vitro fertilization ("IVF") services with his ex-wife. (SAC at 3.) In 2023, while incarcerated, Nelson again sought CRM's services because he "inten[ded] to sire additional children through gestational carriers and other partners." (*Id.*) Nelson alleges this adhered to the Minnesota Department of Corrections' ("DOC") policies for private health care. (*Id.*) Nelson expressed to CRM that his religious beliefs as a practicing Islamic Muslim prohibit him from discarding sperm and requested that CRM provide care consistent with his faith.

---

[3] Nelson has filed various oppositions to the motion to dismiss. (Doc. Nos. 26, 32, 33, 37, 38.) Two of these filings were labeled as motions "contesting" Defendants' motion to dismiss. (Doc. Nos. 26, 32.)

As for the first contested motion (Doc. No. 26), the Court interpreted the filing as Nelson's opposition to the motion to dismiss. (*See* Doc. No. 29.) The Court therefore denies the motion as moot procedurally, but considers the arguments made in the motion. The Court also considers Defendants' reply to these arguments (Doc. No. 30). (*See* Doc. No. 29.)

As for the second contested motion (Doc. No. 32), Nelson asked the Court to strike the motion and the accompanying memorandum (Doc. No. 33). (Doc. No. 37-2.) Therefore, the Court denies the second contested motion as moot and does not consider the arguments made in the accompanying memorandum.

Finally, the Court accepts the most recent opposition filings (Doc. Nos. 37, 38) and considers the arguments made in them. (*See* Doc. No. 40.) The Court notes that it was procedurally improper to raise new arguments in those filings but considers them anyway in the interests of justice. Because these filings raised new arguments, the Court allowed Defendants to file an additional reply memorandum (*see id.*) and considers the arguments made in that second reply memorandum (Doc. No. 41).

(*Id.* at 2-3.)  Defendants allegedly initially agreed to provide services, "confirmed by signed [d]ocumentation and correspondence."[4]  (*Id.* at 3.)  CRM coordinated with Nelson's DOC case managers to begin this process.  (*Id.*)  Defendants then allegedly terminated services, citing a policy against working with incarcerated individuals.  (*Id.* at 4.)  Nelson requested documentation of this policy, but it was not provided.  (*Id.*)

Nelson alleges that this refusal to provide IVF services to him was discrimination based on his carceral status and religion.  (*Id.* at 1.)  Nelson alleges he incurred costs for gestational carriers' agreements, transportation, security, and medical preparations totaling between $55,000 and $100,000 per gestational carrier.  Defendants now move for dismissal of Nelson's claims under Rule 12(b)(6).  (Doc. No. 10.)

## DISCUSSION

### I. Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Ingram v. Ark. Dep't of Corr.*, 91 F.4th 924, 927 (8th Cir. 2024).  In doing so, however, a court need not accept as true wholly

---

[4]  Nelson did not attach any such documentation or correspondence to any of his complaints. (Doc. Nos. 1, 8.)  However, he attached a medical request letter to his first contest motion.  (Doc. No. 34 at 2.)  Nelson's request to strike the second contested motion specifies that the new submissions replaced the handwritten submissions.  (*See* Doc. No. 37-2.)  The Court infers that Nelson intended for the Court to consider the exhibits and therefore considers this letter.  The Court properly considers the letter because it is embraced by the second amended complaint.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

conclusory allegations or legal conclusions. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.     Failure to Plead Involvement with Particularity

As a preliminary matter, the Court dismisses all claims against Dr. Kapfhamer and Attorney Advisors for failure to plead involvement with particularity. A complaint must allege "sufficient personal involvement" to survive a motion to dismiss. *Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001). A plaintiff must explain "who did what to whom" to provide fair notice to the defendant of the grounds for a claim. *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012). "A complaint which lumps all defendants together" fails to state a claim. *Id.*

Each of Nelson's allegations are against "Defendants" collectively; none of the allegations name which Defendant was allegedly involved. (*See* SAC at 4-6.) Nelson alleges only that Dr. Kapfhamer "is an employee of CRM and was directly involved in

4

Plaintiff's Case." (SAC at 2.) He provides no other details as to what Dr. Kapfhamer allegedly did that violated Nelson's rights. Nelson defines the Attorney Advisors as "legal [r]epresentatives for CRM who provided guidance regarding policy changes" that affected Nelson. (*Id.*) In his opposition, Nelson specifically names Fredrikson & Bryon, P.A., in what seems to be an improper attempt to amend his complaint.[5] (Doc. No. 38 at 2.) Even if the Court were to allow a third amendment, there is still no explanation of what the law firm did other than serving as CRM's legal counsel. Mere identification of the parties without a specific description of what they did is insufficient to sustain a claim.

Similar identification issues exist for CRM as well. Nelson merely identifies CRM as a fertility and IVF service provider, without specifying what CRM did. (SAC at 2.) Regardless, the Court interprets[6] Nelson's claims as specifying claims against CRM because CRM would be the party with whom Nelson was allegedly contracting and the party that had the policy Nelson is contesting. The Court therefore turns to the substance of each claim insofar as it is asserted against CRM.

---

[5] Even *pro se* plaintiffs are prohibited from using an opposition to a motion to dismiss to effectively amend their complaint. *See Hamilton-Warwick v. Volkswagen Grp. of Am.*, No. 18-cv-443, 2018 WL 3677927, at *3 (D. Minn. Aug. 2, 2018).

[6] *Pro se* complaints are entitled to liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## III.  Failure to State a Claim[7]

### A.  Breach of Contract

In Count 1, Nelson alleges that "Defendants agreed to provide IVF services" and subsequently "refus[ed] to complete the agree[d] upon services," constituting a breach of contract. (SAC at 4-5.) Under Minnesota law, the elements of a breach of contract claim are: "(1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." *Nelson v. Am. Fam. Mut. Ins. Co.*, 899 F.3d 475, 480 (8th Cir. 2018) (quoting *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1107 (8th Cir. 2013)).

Nelson fails the first hurdle: alleging formation of a contract. A plaintiff must allege clear and definite terms of a contract. *Motley v. Homecomings Financial, LLC*, 557 F. Supp .2d 1005, 1012-13 (D. Minn. 2008). Nelson alleges only that "Defendants agreed to provide IVF services," which was "confirmed by signed [d]ocumentation and correspondence." (SAC at 3-4.) Nelson does not allege any specifics of what services CRM was supposed to perform or what Nelson would pay CRM. Such bare bones descriptions of an alleged contract are insufficient. *Cf. Toomey v. Dahl*, 63 F. Supp. 3d 982, 998 (D. Minn. 2014) (dismissing a breach of contract claim for lacking allegations of the specific financial arrangement).

---

[7]  Nelson's oppositions address only the breach of contract and breach of the covenant of good faith and fair dealing claims. (*See* Doc. Nos. 26, 37, 38.) Failure to respond to all other claims is enough to dismiss those claims. *Zimmerschied v. JP Morgan Chase Bank, N.A.*, 49 F. Supp. 3d 583, 590-91 (D. Minn. 2014). However, the Court nonetheless considers arguments on those claims in the interests of justice.

Nelson attempted to remedy this by filing a letter of consent to services signed by himself and Dr. Kapfhamer. (Doc. No. 34 at 2.) However, this letter still fails to spell out the material terms of the contract. It only says that Nelson is "requesting a medical visit" and that by signing, the provider "agree[s] to provide [their] services." (*Id.*) But what those services are is not defined whatsoever. The letter does not rectify the pleading failures discussed above. Relatedly, Nelson asserts that discovery will uncover the details of any contract. But the Court cannot skip to discovery when it finds no plausible claim in the complaint. *See Iqbal*, 556 U.S. at 678-79.

The Court need not consider performance, breach, or damages because Nelson has failed to allege formation of a contract. Count 1 of the second amended complaint is dismissed.

    **B.**    **Covenant of Good Faith and Fair Dealing**

In Count 2, Nelson alleges that "Defendants failed to act in good faith [by] unilaterally terminating services" and that he incurred significant expenses relying on Defendants. (SAC at 5.) The covenant of good faith and fair dealing is implied in all contracts. *E.g.*, *U.S. Bank Nat'l Ass'n v. S.A. Cash Network*, 252 F. Supp. 3d 714, 721 (D. Minn. 2017). Without a valid contract, there can be no breach of the covenant of good faith and fair dealing. *See Green v. Bayview Loan Servicing, Inc.*, No. 19-cv-2949, 2020 WL 3491668, at *5 (D. Minn. June 12, 2020). Because the Court dismissed Count 1, Count 2 must be dismissed as well.

### C.     Religious Discrimination

In Count 3, Nelson alleges that "Defendants' refusal to work with Plaintiff was motivated, in part, by bias against his [religious] beliefs regarding the use of sperm and family planning" in violation of state and federal law.  (SAC at 5.)  Nelson does not identify a specific law on which he bases this claim and the Court finds no law which could support his claim.  A federal religious discrimination claim can be brought against an employer or the government.  *See Kale v. Aero Simulation, Inc.*, No. 23-3380, 2025 WL 1585297, at *2 & n.2 (8th Cir. June 5, 2025) (noting that Religious Freedom Restoration Act and First Amendment claims may only be brought against the government, and that Title VII claims require connection to an employment requirement).  CRM is neither Nelson's employer nor a state actor, so these laws are inapplicable.  And there is no protection from religious discrimination in the business context under state law.  Minn. Stat. § 363A.17 (2024).  Further, Nelson explains that his beliefs prohibit discarding sperm but does not explain how CRM's practices would violate that belief.  Count 3 is dismissed.

### D.     Intentional Infliction of Emotional Distress

In Count 4, Nelson alleges that "Defendants' conduct, including abrupt termination of services [without] provid[ing] clear reasons or policies, was extreme and outrageous," and that Defendants "acted with reckless disregard for [his] emotional well-being," which caused him severe distress.  (SAC at 6.)  To succeed on a claim of intentional infliction of emotional distress ("IIED"), a plaintiff must establish:  "(1) the conduct is extreme and outrageous; (2) the conduct is intentional or reckless; (3) the

8

conduct causes emotional distress; and (4) the distress is severe." *Yang v. Robert Half Int'l, Inc.*, 79 F.4th 949, 966 (8th Cir. 2023).  Conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Fredin v. Middlecamp*, 500 F. Supp. 3d 752, 785 (D. Minn. 2020) (quoting *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 439 (Minn. 1983)).

Even if a valid contract existed and CRM breached it, abruptly terminating a contract does not rise to the level of "utterly intolerable to the civilized community." *Id.*; *cf. Larson v. Seagate Tech., Inc.*, No. 00-cv-2507, 2001 WL 1608844, at *3 (D. Minn. Dec. 7, 2001) (explaining that wrongful termination is not sufficiently extreme to support a claim for IIED).  Further, even if the contract was terminated due to a policy against working with incarcerated people, the conduct is still not extreme or outrageous.  *Cf. Boone v. Fed. Express Corp.*, 59 F.3d 84, 87 (8th Cir. 1995) (finding that discriminatory actions are not *per se* extreme and outrageous).  Alternatively, a bare allegation of significant emotional distress does not meet the injury requirement for IIED.  *See Njema v. Wells Fargo Bank, N.A.*, 124 F. Supp. 3d 852, 877 (D. Minn. 2015) (collecting cases in which IIED claims were dismissed for insufficient injury when plaintiffs alleged only emotional and minor physical harms).  Count 4 is dismissed.

### E. Negligent Infliction of Emotional Distress

In Count 5, Nelson alleges that "Defendants' negligent actions in handling Plaintiff's case created foreseeable risk of emotional harm." (SAC at 6.)  To state a claim for negligent infliction of emotional distress, a plaintiff must plead facts indicating they: (1) were within a zone of danger of physical impact; (2) reasonably feared for their own

9

safety; and (3) suffered severe emotional distress with attendant physical manifestations. *Yang*, 79 F.4th at 963.

Nelson fails to allege the necessary facts. There is no allegation that Nelson was within a zone of physical danger. There is also no allegation that Nelson feared for his own safety. And, even when looking to allegations in other parts of the second amended complaint regarding severe emotional distress, there is no allegation of attendant physical manifestations. Count 5 is dismissed.

F.    **Hostile Environment**

In Count 6, Nelson alleges that "Defendants' conduct fostered a hostile environment for Plaintiff and his partners, creating unnecessary tension and emotional hardship." (SAC at 6.) Nelson does not identify a specific law on which he bases this claim and the Court finds no law which could support his claim. First, hostile environment claims are limited to certain contexts, none of which apply to Nelson. *See, e.g.*, *Clobes v. 3M Co.*, 106 F.4th 803, 806-08 (8th Cir. 2024) (discussing hostile environment claim in the employment context); *K.R. ex rel. Proctor v. Duluth Pub. Schs. Acad.*, 591 F. Supp. 3d 418, 428-30 (D. Minn. 2022) (discussing hostile environment claim in the education context). Second, even if a hostile environment were actionable, Nelson does not explain any details, namely, how CRM impacted his environment while he was incarcerated. This claim is meritless and Count 6 is dismissed.

G.     **Other Claims**[8]

Reading Nelson's second amended complaint liberally, he attempts to state a claim for discrimination based on carceral status. (SAC at 1 ("Nelson[] seek[s] redress for [d]iscriminatory conduct . . . stemming from Defendants' [r]efusal to provide medical services related to [IVF] based on Plaintiff's incarceration . . . .").) Federal and state law protect against discrimination in employment, housing, public accommodations, public services, and education. *See generally* Civil Rights Act of 1964, Pub. L. No. 88-352, 78 Stat. 241; Minn. Stat. ch. 363A (2024). While incarcerated individuals are protected from discrimination based on protected categories in these contexts, the status of being incarcerated is not a protected category. *Higgins v. Carpenter*, 258 F.3d 797, 799 (8th Cir. 2001). This claim fails.

Nelson also mentions "potential violations of [federal] constitutional rights." (SAC at 3.) He does not, however, name any right that is allegedly being violated. Regardless, any federal constitutional claim for discrimination is precluded because CRM is not a state actor. *Cf. Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619 (1991) ("Racial discrimination, though invidious in all contexts, violates the Constitution only when it may be attributed to state action."). Any federal constitutional claim fails.

Finally, Nelson seeks an award of attorney's fees pursuant to 42 U.S.C. § 1988. (SAC at 7.) Nelson is *pro se* and therefore has no attorney's fees to pay, so there is no

---

[8]    Construing Nelson's complaint liberally, Defendants address additional, non-labeled claims. (Doc. No. 12 at 19.) The Court does the same.

basis of relief.  *See Simon v. Fed. Bureau of Prisons*, No. 16-cv-704, 2016 WL 5109543, at *5 (D. Minn. Aug. 29, 2016).  This claim fails as well.

## CONCLUSION

The Court has been very generous with Nelson as a *pro se* litigant, extending deadlines and accepting the second amended complaint and various memorandums that were filed without leave of court.  Nelson has been given every opportunity to make a convincing argument but has failed to do so.  Therefore, the Court dismisses his claims with prejudice.  *See, e.g.*, *Machen v. Iverson*, No. 11-cv-1557, 2012 WL 566977, at *15 (D. Minn. Jan. 23, 2012), *report and recommendation adopted*, 2012 WL 567128 (D. Minn. Feb. 21, 2012) ("[W]hen a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.").  Because the Court dismisses Nelson's second amended complaint with prejudice, his requests for discovery and a scheduling order are moot.

## ORDER

Based upon the foregoing and the record in this case, **IT IS HEREBY ORDERED** that:

1. Defendants' motion to dismiss (Doc. No. [10]) is **GRANTED**.

2. Plaintiff's claims (Doc. No. [8]) are **DISMISSED WITH PREJUDICE**.

3. Plaintiff's motions contesting Defendants' motion to dismiss (Doc. Nos. [26], [32]) are **DENIED AS MOOT**.

4.       Plaintiff's requests for discovery and a scheduling order (Doc. No. [26]) are **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated:  June 25, 2025                           s/Donovan W. Frank
                                                          DONOVAN W. FRANK
                                                          United States District Judge